UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DEVIN D. HOWARD, | CASE NO. 1:20-cv-02802 |
| Plaintiff, | OPINION & ORDER |
| | [Resolving Docs. 50, 51, 52, 53] |
| v. | |
| JAMIE ONION, et al., | |
| Defendants. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In July 2018, officers searched an apartment where *pro se* Plaintiff Devin Howard lived with his brother. During the search, the officers found and seized an AR-15 rifle. Howard sued, arguing that the search and seizure were unlawful. The Court dismissed most of Plaintiff's claims, and only two claims remain.[1]

First, Howard has a § 1983 claim against Defendants Jamie Onion, Ronald Parmertor, Michael Gerardi, and Greg Leonbruno (the Officer Defendants). Howard alleges that the Officer Defendants violated his Fourth Amendment rights when they searched his apartment and seized his rifle.

Second, Howard has a conversion claim against Defendant City of Willoughby Hills, also based on the seizure of his rifle.

The Officer Defendants now seek summary judgment on the § 1983 claim, asserting that they are protected by qualified immunity.[2] The Officer Defendants argue that they

---

[1] *Howard v. Onion*, No. 21-3515, 2022 WL 2065950, at *3 (6th Cir. May 17, 2022).
[2] Doc. 51. Although the City technically joins the Officer Defendants' motion, the § 1983 claim is not asserted against the City.

Case No. 1:20-cv-02802
GWIN, J.

received consent from Plaintiff's brother to search the apartment and that the plain view doctrine authorized them to seize the AR-15 rifle.

None of the Defendants addressed Plaintiff Howard's conversion claim against the City.  However, in its review of the record, the Court identified that the City may be immune from the conversion claim under Ohio's Political Subdivision Tort Liability Act.  The Court ordered the parties to file briefs discussing the City's potential immunity.[3]  Defendants filed a brief by the Court's deadline,[4] but as of the date of this Order, the Court has still not received Plaintiff's brief.

For the following reasons, the Court finds that the Officer Defendants are protected by qualified immunity and that the City is immune from Plaintiff Howard's conversion claim. The Court therefore **GRANTS** summary judgment in favor of all Defendants on all claims.[5]

There are also several pending discovery disputes.  The Court finds that none of those discovery disputes would affect its summary judgment decision.  So, the Court also **DENIES** all pending discovery motions and **OVERRULES** Plaintiff Howard's objections to the Magistrate Judge's discovery order.

## I. SUMMARY JUDGMENT

### A. Legal Standard

A court may grant summary judgment if a moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a

---

[3] Doc. 61.
[4] Doc. 62.
[5] In Plaintiff Howard's opposition to summary judgment, Howard asks the Court to strike Defendants' motion because they exceeded page limits. Doc. 57 at 4–5.  Defendants' motion is six lines too long.  *See* Doc. 51.  That is only a minor violation of the page limit rules, and the extra material is mostly not substantive.  Because this minor violation did not prejudice Howard, the Court will not strike Defendants' motion.  But the Court reminds Defendants that they must adhere to page limits in any future filings.

- 2 -

Case No. 1:20-cv-02802
GWIN, J.

matter of law."[6]  A dispute is genuine if a reasonable jury could decide in favor of the non-moving party.[7]  And a fact is material if resolving it might affect the outcome of the case.[8]

The moving party has the initial burden of identifying evidence to show that there is no genuine dispute of material fact.[9]  Alternatively, if the moving party does not have the burden of proof at trial, it may also show "that there is an absence of evidence" supporting the non-moving party's case.[10]  Once the moving party meets its initial burden, the non-moving party must offer specific facts showing that there is a genuine dispute.[11]

When evaluating the evidence for summary judgment, the court "should view the facts and draw all reasonable inferences in favor of the non-moving party."[12]  However, a mere "scintilla of evidence" will not create a dispute—there must be enough evidence for a jury to find in favor of the non-moving party.[13]

While courts often rule on summary judgment in response to a motion, a court may grant summary judgment on an issue not raised by the parties.[14]  Before it can do that, the court must identify the relevant issue for the parties, provide notice, and offer the parties a chance to respond.[15]

---

[6] Fed. R. Civ. P. 56(a).
[7] *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004)).
[8] *Id.* (citing *Hedrick*, 355 F.3d at 451).  Plaintiff Howard objects that portions of the Officer Defendants' brief are not backed by evidence as required by Federal Rule of Civil Procedure 56.  Doc. 57 at 8.  The Court does not consider factual assertions unsupported by allowable evidence.
[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[10] *Id.* at 325.
[11] *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (citation omitted).
[12] *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).
[14] Fed. R. Civ. P. 56(f)(3).
[15] *Id.*

Case No. 1:20-cv-02802
GWIN, J.

### B. Section 1983 Claim

The Officer Defendants seek summary judgment on the ground that they are protected by qualified immunity.[16] Under qualified immunity, the Officer Defendants are protected from liability unless they (1) violated a constitutional right, and (2) that constitutional right was clearly established.[17]

When determining whether a right is clearly established, courts cannot define that right "at a high level of generality."[18] Rather, the right "must be 'particularized' to the facts of the case."[19] A right may be clearly established even if there has not been a perfectly analogous case, but that right must be clear enough that any reasonable official would be aware of it.[20]

Plaintiff Howard bears the burden of showing that qualified immunity does not apply.[21] This means that, to defeat summary judgment, Howard must offer "facts and inferences [that] would allow a reasonable juror to conclude that the [Officer Defendants] violated a clearly established constitutional right."[22]

Here, there are two components to Howard's Fourth Amendment claim: (1) the search of the apartment that Howard shared with his brother and (2) the seizure of Howard's rifle. The Court addresses each in turn.[23]

---

[16] Doc. 51; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[17] *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009)).
[18] *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).
[19] *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).
[20] *Id.* (citations omitted).
[21] *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007) (citation omitted).
[22] *Williams v. Maurer*, 9 F.4th 416, 431 (6th Cir. 2021) (citation omitted).
[23] Plaintiff Howard also argues that the Officer Defendants lacked authority to act. He asserts that the Officer Defendants could not have been acting as U.S. Marshals, and so far as they were acting as officers of the Willoughby Hills Police Department, the search and seizure took place outside of the police department's territorial jurisdiction. Doc. 57 at 9–10. However, the Officers Defendants do not argue that they were acting as U.S. Marshals (Doc. 51), and the Court does not find this issue relevant. As to Howard's territorial jurisdiction argument, it is unclear whether state law allows police to conduct searches outside their jurisdiction when someone consents. *State v. Dotson*, 520 N.E.2d 240, 243 (Ohio Ct. App. 1987) (holding that police can "investigate" outside of their jurisdiction but may not execute search warrants). Nor is it

- 4 -

Case No. 1:20-cv-02802
GWIN, J.

### 1. Warrantless Search

Plaintiff Howard alleges that the Officer Defendants violated his Fourth Amendment rights when they conducted a warrantless search of the apartment that Howard shared with his brother.[24]

In their summary judgment motion, the Officer Defendants concede that they did not have a warrant.[25] Instead, the Officer Defendants argue that their search was justified because they received consent from Howard's brother.[26]

The Officer Defendants are correct that law enforcement may search a home without a warrant if consent is given.[27] However, the person giving consent must have the actual or apparent authority to consent.[28] The consent must also be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion."[29]

Here, Plaintiff Howard's brother gave consent to search all areas of the apartment "which could contain a firearm and currency."[30] Therefore, the Officer Defendants' search was legal unless Howard's brother lacked authority, the consent was not voluntary, or if the Officer Defendants went beyond the scope of consent. Howard argues only that the consent was not voluntary and that the Officer Defendants exceeded the scope of consent.[31]

---

clear that state laws about police jurisdiction are relevant in the federal Fourth Amendment context. Regardless, Howard has not provided evidence to back up his assertion that his apartment was outside the Willoughby Hills Police Department's territorial jurisdiction, so the Court does not credit his argument.
[24] Doc. 17 at ¶¶ 12–17.
[25] *See generally* Doc. 51.
[26] *Id.* at 9–10.
[27] *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010) (citation omitted).
[28] *United States v. Purcell*, 526 F.3d 953, 962 (6th Cir. 2008) (citation omitted).
[29] *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (citations omitted).
[30] Doc. 51-2.
[31] Doc. 57 at 11–13.

Case No. 1:20-cv-02802
GWIN, J.

### a. Voluntariness

Whether consent is voluntary depends on the totality of the circumstances.[32] In evaluating the totality of the circumstances, the Court looks to both the characteristics of the consenter and, if the consenter was detained, the detention characteristics.[33] The government has the burden to prove that consent was voluntary.[34]

At the first step of the qualified immunity analysis, the Court finds there is no genuine dispute that the consent was voluntary. As the Officer Defendants explained, Plaintiff Howard's brother signed a search consent form. By signing that consent form, Howard's brother affirmed that: (a) he knew he could deny consent, (b) he knew law enforcement would need a warrant if he refused to consent, and (c) anything found in the search could be used against him.[35] Howard's brother also affirmed that he was consenting "voluntarily and of [his] own free will, without having been subjected to any coercion."[36] Further, Defendant Police Officer Jamie Onion testified that he explained the consent form to Howard's brother, including telling Howard's brother that he could withdraw consent.[37]

Since the Officer Defendants produced evidence showing that the consent was voluntary, Plaintiff Howard then has the burden to produce evidence creating a factual dispute about voluntariness.[38] Howard has failed to meet that burden.

To begin, Howard points to evidence that his brother could not read.[39] But the fact that Howard's brother could not read does not mean that Howard's brother could not

---

[32] *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).
[33] *Harris v. Klare*, 902 F.3d 630, 639 (6th Cir. 2018).
[34] *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011).
[35] Doc. 51-2.
[36] *Id.*
[37] Doc. 51-3 at ¶ 5.
[38] *White*, 533 F.3d at 390.
[39] Doc. 57 at 11 (citing Doc. 57-4).

Case No. 1:20-cv-02802
GWIN, J.

understand what he was consenting to.[40]  More importantly, Howard's brother was not required to read the consent form—Defendant Onion explained the contents of the consent form verbally.[41]

Next, Howard suggests that there are inconsistencies in the record that create a factual dispute.  Howard implies that it is contradictory for the Officer Defendants to say that Howard's brother was able to understand the consent form while also saying that Defendant Onion explained the form to Howard's brother.[42]  The Court disagrees.  There is nothing contradictory about both being true at the same time.

Howard also observes that the Officer Defendants stated in discovery that they could not recall assisting Howard's brother with the consent form.[43]  But failing to recall whether Howard's brother needed assistance is not the same as affirmative evidence showing Howard's brother could not understand the consent form or was coerced into consenting.  With this argument, Howard is pointing out a supposed *lack* of evidence.  But as the Court just explained, the Officer Defendants produced enough evidence to meet their burden already.  And Howard cannot survive summary judgment by pointing to a lack of evidence because Howard has the final burden of proving that qualified immunity does not apply.[44]

In a final attempt to create a factual dispute, Howard makes two last arguments.  First, Howard claims that it was absurd for the Officer Defendants to take the time to read the consent form to his brother.[45]  According to Howard, the situation was so urgent that the

---

[40] *See United States v. Brown*, No. 3:19-cr-55, 2021 WL 4592816, at *4 (E.D. Tenn. Oct. 6, 2021) (finding that inability to read and write alone did not invalidate a consent to search).
[41] Doc. 51-3 at ¶ 5.
[42] Doc. 57 at 11 (citing Doc. 51-3; Doc. 57-5).
[43] *Id.* at 12 (citing Doc. 57-7).
[44] *See Williams*, 9 F.4th at 431.
[45] Doc. 57 at 11.

- 7 -

Case No. 1:20-cv-02802
GWIN, J.

Officer Defendants could not have spared the time to read the form aloud.[46] Second, Howard claims that his brother was detained for two hours before signing the consent form.[47]

Neither of those claims are supported by evidence. Nothing in the record suggests there was not enough time to read a short, one-page form.[48] And Howard relies on allegations in his complaint, not evidence, to back up the claim that his brother was in custody for two hours.[49]

Additionally, even if Howard had evidence that his brother was interrogated for two hours, "custody, standing alone, [is] insufficient to indicate consent was coerced."[50] Howard has produced no other facts suggesting that his brother's consent was involuntary, so his brother's interrogation does not create a fact dispute.

In short, there is no evidence in the record showing that Plaintiff Howard's brother could not understand his rights. There is no evidence that Howard's brother could not understand the officers' questions or request to search the apartment. And there is no evidence that any officer ever threatened Howard's brother or attempted to coerce him. Plaintiff Howard has therefore failed to establish any dispute that his brother's consent was voluntary.[51]

For similar reasons, Howard has also failed to meet his burden at step two of the qualified immunity analysis. Howard has not pointed to any case law clearly establishing that consent is not voluntary under these circumstances.

---

[46] Doc. 57 at 12.
[47] *Id.*
[48] *See* Doc. 51-2.
[49] Doc. 57 at 12 (citing Doc. 17 at ¶ 12).
[50] *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998) (citing *United States v. Watson*, 423 U.S. 411 (1976)).
[51] *See United States v. Ables*, 280 F. App'x 513, 517 (6th Cir. 2008) (finding voluntary and intelligent consent when the record lacked evidence showing that the consenter could not understand or was coerced).

Case No. 1:20-cv-02802
GWIN, J.

### b. Scope

Plaintiff Howard also argues that the Officer Defendants exceeded the scope of consent by taking photographs.[52] However, the Sixth Circuit has held that officers conducting an otherwise lawful search do not exceed the scope of that search simply by taking photographs of what they saw.[53] So, the Officer Defendants did not violate Howard's rights by taking pictures, let alone violate a clearly established right.

### 2. Warrantless Seizure

In addition, Plaintiff Howard alleges that the Officer Defendants violated his Fourth Amendment rights when they seized a rifle from his apartment.[54] The Officer Defendants argue that the seizure was legal under the plain view doctrine.

Under the plain view doctrine, police may seize an object without a warrant when four conditions are met: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object."[55]

As the Court just found above, the Officer Defendants were lawfully searching Howard's apartment, so the Officer Defendants were legally present. And as a photograph taken during the search shows, the rifle was in plain view, unobstructed by anything that would impede the Officer Defendants' right of access.[56] Indeed, Howard does not challenge the first, second, or fourth elements of the plain view doctrine.

---

[52] Doc. 57 at 13.
[53] *Bills v. Aseltine*, 958 F.2d 697, 707 (6th Cir. 1992).
[54] Doc. 17 at ¶¶ 12–17.
[55] *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990); *United States v. McLevain*, 310 F.3d 434, 438–39 (6th Cir. 2002)).
[56] Doc. 57-10 (photograph); Doc. 57 at 14–15 (noting that the photo depicts the rifle prior to seizure); Doc. 51-3 at ¶ 11 (Defendant Onion testifying that he took a photograph of the rifle prior to seizure).

Case No. 1:20-cv-02802
GWIN, J.

Howard challenges only the third element of the plain view doctrine, arguing that his rifle's incriminating nature was not immediately apparent. However, Defendants Jamie Onion and Michael Gerardi both testified that they could immediately tell Howard's rifle was too short and likely illegal.[57] And as the Sixth Circuit has repeatedly held, the shortness of a gun's barrel is enough to satisfy the third element of the plain view doctrine.[58]

Plaintiff Howard's counterargument is not persuasive. Howard claims that, because Defendant Onion asked Defendant Gerardi for a second opinion and the two officers confirmed the length of the rifle after seizing it, the two officers had doubts about the incriminating nature of the rifle.[59]

But the plain view doctrine does not require certainty. It requires only probable cause.[60] The evidence shows that Defendants Onion and Gerardi obtained probable cause when they viewed the rifle, even if neither was absolutely sure the rifle was illegally short.

Consequently, Plaintiff Howard's seizure claim fails at step one of qualified immunity because the plain view doctrine applies.[61]

The seizure claim also fails at step two. Rather than clearly establishing that Howard has a Fourth Amendment right in these circumstances, Sixth Circuit case law clearly establishes that it *does not* violate the Fourth Amendment to seize a short-barreled rifle under the plain view doctrine.[62]

---

[57] Doc. 51-3 at ¶¶ 9–10 (Defendant Onion); Doc. 51-4 at ¶¶ 6–7 (Defendant Gerardi).
[58] *United States v. Carmack*, 426 F. App'x 378, 383 (6th Cir. 2011) (collecting cases).
[59] Doc. 57 at 15.
[60] *McLevain*, 310 F.3d at 441 ("[T]he Supreme Court does not require that officers *know* that evidence is contraband. . . . It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime.") (internal quotation marks omitted) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).
[61] The Officer Defendants briefly raised the community caretaker exception as an alternative to the plain view doctrine. Doc. 51 at 6, 18. Because the Court grants summary judgment on the plain view doctrine, it does not address that alternative argument.
[62] *Carmack*, 426 F. App'x at 383.

- 10 -

Case No. 1:20-cv-02802
GWIN, J.

\* \* \*

For the reasons given above, the Court finds that the Officer Defendants are protected by qualified immunity and **GRANTS** summary judgment in favor of the Officer Defendants on Plaintiff's § 1983 claim.

### C. Conversion Claim

Plaintiff Howard also alleges a state-law conversion claim against Defendant City of Willoughby Hills.[63] Like the § 1983 claim, Howard's conversion claim is based on the seizure of Howard's rifle.

The Court concludes that the City is immune from Plaintiff's claim.

Ohio courts apply a three-part test to determine whether a city is immune under the Tort Liability Act.[64] First, they consider whether the general immunity rule applies: cities are immune from torts that are allegedly committed "in connection with a governmental or proprietary function."[65] Second, if there is general immunity, the courts ask if one of the five exceptions to immunity under Ohio Revised Code § 2744.02(B) applies.[66] Finally, if one of those exceptions applies, the courts ask if one of the defenses in Ohio Revised Code § 2744.03 applies.[67]

At the first step of this test, the Court finds that general immunity applies. When the Officer Defendants seized Howard's rifle, they were performing police work, a governmental function.[68] And when the City later destroyed Howard's rifle as contraband, they were

---

[63] Doc. 17 at ¶ 24.
[64] *Hortman v. Miamisburg*, 110 Ohio St. 3d 194, 196–97 (2006).
[65] *Id.* (quoting Ohio Rev. Code § 2744.02(A)(1)).
[66] *Id.* at 197.
[67] *Id.*
[68] *Brown v. Cincinnati*, 162 N.E.3d 1274, 1279–80 (Ohio Ct. App. 2020).

- 11 -

Case No. 1:20-cv-02802
GWIN, J.

likewise performing a governmental function permitted by Ohio law.[69] Because both actions are governmental functions, both are protected by immunity.

Turning to the second step of the test, the Court finds that none of the exceptions to immunity apply. Section 2744.02(B) identifies five exceptions. The first four all relate to negligence.[70] Since conversion is an intentional tort, those exceptions do not apply.[71] The final exception is a catch-all for any exceptions explicitly provided by other Ohio statutes.[72] Plaintiff Howard has not identified any such statutes, so this last exception does not apply either.[73]

Because general immunity applies and there is no exception, the City is immune from Howard's conversion claim. The Court **GRANTS** summary judgment in favor of the City.

## II.  DISCOVERY DISPUTES

Plaintiff Howard also has two pending motions to compel and one pending objection to the Magistrate Judge's discovery order.[74] Most of these discovery disputes are not relevant to the Court's summary judgment analysis. Only three disputes are arguably relevant, so the Court addresses those specifically.

First, Howard argues that Defendants gave an evasive response to a discovery request about how long police interrogated Howard's brother.[75] This is arguably relevant to the question of whether the consent to search was voluntary. As the Court found above, though, even if the interrogation lasted two hours as Howard claims, that fact alone does not create

---

[69] Doc. 57-9 (interrogatory response indicating that Defendants had destroyed Plaintiff Howard's rifle under Ohio Revised Code § 2981.12(B)).
[70] Ohio Rev. Code §§ 2744.02(B)(1)–(4).
[71] *DSS Servs., LLC v. Eitel's Towing, LLC*, No. 18AP-567, 2019 WL 3573586, at *7 (Ohio Ct. App. Aug. 6, 2019).
[72] *Brown*, 162 N.E.3d at 1280 (citing Ohio Rev. Code § 2744.02(B)(5)).
[73] *See id.* (declining to apply the fifth exception when the plaintiff did not identify relevant statutory provisions).
[74] Docs. 50, 52, 53.
[75] Doc. 50 at 5; Doc. 50-2 at 3 (Request for Admission No. 8)

Case No. 1:20-cv-02802
GWIN, J.

a dispute about voluntariness.[76] Thus, compelling a more detailed response from Defendants would not change the summary judgment analysis, and this discovery dispute is moot.

Second, Howard claims that Defendants' document production was not reasonably usable because Howard did not have access to a computer that he could use to view the production.[77] However, it appears Howard could access Defendants' production. The production contained photographs taken during the search, and Howard attached such a photograph to his summary judgment opposition.[78] As such, the Court denies Howard's motion to compel as to this discovery dispute.

Finally, Howard complains about Defendants' discovery responses regarding the items seized from Howard's apartment. Defendants say that they seized only a rifle,[79] but Howard believes that they also seized ammunition.[80] To justify his belief, Howard relies on the fact that Defendants asked about ammunition in an interrogatory to Howard.[81]

The Magistrate Judge did not compel Defendants to supplement their responses regarding the items seized,[82] and Howard objected to that decision.[83]

District courts can reverse a non-dispositive magistrate judge order only if the order contains clear error or is contrary to law.[84] Howard does not argue that the Magistrate Judge applied the wrong legal standard, and the Court finds no clear error. As the Magistrate Judge

---

[76] *See supra* Section I.B.1.a.
[77] Doc. 53-2 at 8 & n.20.
[78] *See id.* at 6 (Request for Production No. 6); Doc. 57-10 (photograph taken during search).
[79] Doc. 48 at 4.
[80] Doc. 52 at 3–4.
[81] *Id.* at 4.
[82] Doc. 48 at 4–5.
[83] Doc. 52 at 3–6.
[84] *Carter v. Hickory Healthcare Inc.*, No. 5:14-cv-2691, 2015 WL 4645002, at *1 (N.D. Ohio Aug. 4, 2015) (citations omitted).

Case No. 1:20-cv-02802
GWIN, J.

correctly ruled, mere suspicion that a party has not produced all information is not enough to compel more discovery.[85]

The fact that Defendants asked about ammunition at an earlier point in discovery does create more than a mere suspicion. Parties learn more about the facts as discovery moves forward. While earlier in this case, Defendants may have been unsure if ammunition was seized, they have since represented to the Court that no ammunition was seized.[86] Without stronger reason to doubt that representation, the Court finds no clear error. The Court therefore overrules Howard's objection on this discovery issue.

As for all discovery issues that the Court did not specifically address above, the Court finds that those issues are irrelevant to summary judgment and are moot. So, the Court **DENIES** Howard's motions to compel and **OVERRULES** Howard's objections.

### III.     CONCLUSION

The Court **GRANTS** summary judgment in favor of all Defendants on all remaining claims. The Pretrial Conference scheduled for October 10, 2023, as well as all other dates and deadlines, are **VACATED**.

All pending discovery motions are **DENIED**, and Plaintiff Howard's objections to the Magistrate Judge's discovery order are **OVERRULED**.[87]

IT IS SO ORDERED.

Dated: September 29, 2023                             *s/     James S. Gwin*
                                                                     JAMES S. GWIN
                                                                     UNITED STATES DISTRICT JUDGE

---

[85] Doc. 48 at 4 (citing *Conley v. United States*, No. 2:10-cv-444, 2011 WL 5326133, at *2 (S.D. Ohio Nov. 4, 2011)).
[86] Doc. 41 at 1–2 ("The answers provided are complete answers and constitute a specific and detailed list of items taken during the course of the search.").
[87] Plaintiff Howard also raises discovery issues in his opposition to the Officer Defendants' motion for summary judgment. Doc. 57 at 5–8. To the extent those discovery arguments can be construed as a motion to compel or for discovery sanctions, the Court finds that the arguments are irrelevant to its summary judgment decision and **DENIES** those motions.